**DESAI, Appellee and Cross–Appellant.**

**v.**

**FRANKLIN et al., Appellants and Cross–Appellees.**

[Cite as *Desai v. Franklin,* 177 Ohio App.3d 679, 2008-Ohio-3957.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 23930 and 23939.

Decided Aug. 6, 2008.

684

Scott H. Ruport and Louise M. Mazur, for appellee and cross-appellant.

John N. Childs, E. Lee Wagoner, and Joel A. Holt, for appellants and cross-appellees.

WHITMORE, Judge.

{¶ 1} Appellant and cross-appellee, Aris W. Franklin, M.D., appeals from the decision of the Summit County Court of Common Pleas awarding judgment to appellee and cross-appellant, Ashokkumar J. Desai, M.D. Additionally, Desai cross-appeals from the trial court's ruling on the issues of punitive damages, attorney fees, and other various issues. This court affirms in part and dismisses in part.

## I

{¶ 2} In May 1978, Franklin and Desai entered into an employment agreement whereby Desai would join Franklin's professional corporation, Diagnostic Imaging.[1] The employment agreement provided that Desai's compensation "shall be computed as a percentage of the operating net income," which would be calculated by Diagnostic Imaging's accountant. The agreement specified that the distribution of "net income" would be divided into two stages. First, Franklin would receive five percent of the net income "before all salaries, bonuses and pension contributions." Second, Desai would then receive a certain, increasing percentage of the resulting net operating income in the following amounts:

For the year beginning July 1, 1978   30%
For the year beginning July 1, 1979   35%
For the year beginning July 1, 1980   40%
For the year beginning July 1, 1981   50%

The employment agreement also provided that Desai would receive a certain percentage of Diagnostic Imaging's accounts receivable upon his termination. Desai would be entitled to receive 45 percent of the accounts receivable for any termination occurring after July 1, 1981.

{¶ 3} Desai and Franklin signed a buy-sell agreement on the day that they executed their employment agreement. Desai received 15 shares of Diagnostic Imaging on the date of the execution, with Franklin holding the remaining 85 shares. Pursuant to the buy-sell agreement, Desai would purchase an additional 34 shares over the next three years so that he eventually would own 49 shares to Franklin's 51 shares. The buy-sell agreement restricted the sale of any common stock. Furthermore, the agreement contained a redemption clause whereby Diagnostic Imaging would buy back Desai's shares upon the termination of his employment. The agreement provided that the value of the shares would be the net worth of Diagnostic Imaging on the last day of the month preceding termination divided by the number of outstanding shares. The accounts receiv-

---

1. Although the corporation changed names several times over the years, we refer to the corporation by its current moniker, Diagnostic Imaging.

able, however, would not be included in the calculation of the corporation's net worth.

{¶ 4} Desai formally resigned as an employee of Diagnostic on September 1, 2000. After Desai's resignation, questions arose as to whether or not Franklin had comported with the terms of the employment agreement and the buy-sell agreement. Specifically, Desai and Franklin disagreed over the amount of money that Desai was entitled to for his percentage of the accounts receivable and deferred-compensation payments that he was due under the employment agreement. Desai also alleged that Diagnostic Imaging had failed to redeem his stock as provided for in the buy-sell agreement.

{¶ 5} On January 22, 2002, Desai filed suit against Franklin and Diagnostic Imaging for breach of fiduciary duty, breach of contract as to the employment agreement and the buy-sell agreement, unjust enrichment and self-dealing, punitive damages, and attorney fees. Franklin and Diagnostic Imaging answered on March 13, 2002, and counterclaimed against Desai for breach of contract and unjust enrichment. Subsequently, the parties engaged in a lengthy period of discovery.

{¶ 6} On March 20, 2006, Desai filed an amended complaint to bring an additional claim for fraud against Franklin. According to Desai, Franklin had failed to notify him of shareholder's meetings, had forged Desai's signatures on the shareholder's meeting minutes, and had fraudulently altered the employment agreement to receive a bigger profit. Desai informed the court that he discovered that Franklin had taken these additional actions only after receiving certain evidence in discovery. Consequently, the trial court permitted Desai to bring his fraud claim in addition to his remaining claims. Desai included a request for punitive damages and attorney fees in the prayer for relief of his fraud claim.

{¶ 7} On November 13, 2006, Desai filed a motion for an order compelling Franklin to engage in discovery and sanctioning him for providing incomplete and evasive answers to Desai's discovery requests. The court eventually denied Desai's motion, finding that there was no merit to the issues Desai had raised.

{¶ 8} The matter proceeded to a jury trial on June 4, 2007. Before the jurors began deliberating, the trial court (1) directed a verdict in Diagnostic Imaging's favor on the fraud claim; (2) directed a verdict in Desai's favor on the liability portion of Desai's breach-of-contract claim as to Diagnostic Imaging; (3) ordered that Desai's claim for breach of contract against Franklin be dismissed with prejudice; (4) directed a verdict in Desai's favor on the liability portion of Desai's breach-of-fiduciary-duty claim against Franklin; and (5) ordered that Desai's claim for punitive damages be dismissed with prejudice. Franklin and Diagnostic Imaging also agreed to dismiss their counterclaims against Desai. The jury subsequently awarded judgment to Desai and against Franklin in the following

amounts: (1) $50,670.18 for his breach-of-fiduciary-duty claim; (2) $116,248.00 for his fraud claim; and (3) $301,597.34 for his unjust-enrichment claim. The jury determined that Diagnostic Imaging did not owe Desai any compensatory damages pursuant to his breach-of-fiduciary-duty and breach-of-contract claims.

{¶ 9} On June 15, 2007, Desai filed a motion for prejudgment interest in which he argued that Franklin had failed to make a good-faith effort to settle the case in accordance with R.C. 1343.03 and *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331. Meanwhile, Franklin filed a motion for judgment notwithstanding the verdict ("JNOV"). The trial court scheduled a hearing to address both motions. The trial court ultimately denied the JNOV and awarded Desai prejudgment interest in the amount of $573,939.76.

{¶ 10} On October 23, 2007, Franklin filed his notice of appeal in this court. On October 31, 2007, Desai filed a separate notice of appeal. This court consolidated the appeals on December 7, 2007. The appeal, containing three assignments of error and five cross-assignments of error, is now before this court. For ease of analysis, we rearrange and consolidate several of the assignments and cross-assignments of error.

II

*Assignment of Error Number One*

The trial court erred in denying Dr. Franklin's motion for judgment notwithstanding the verdict because Dr. Desai recovered damages that were barred by the applicable statute of limitations.

{¶ 11} In his first assignment of error, Franklin argues that the trial court erred in denying his JNOV on Desai's unjust-enrichment claim. Specifically, Franklin argues that the court failed to apply R.C. 2305.07's six-year statute of limitations, which would have barred Desai's recovery on any injury accruing before January 22, 1996. We disagree.

{¶ 12} After a court enters judgment on a jury's verdict, a party may file a JNOV to have the judgment set aside on grounds other than the weight of the evidence. See Civ.R. 50(B). This court reviews a trial court's grant or denial of a JNOV de novo. *Williams v. Spitzer Auto World Amherst, Inc.*, 9th Dist. No. 07CA009098, 2008-Ohio-1467, 2008 WL 835839, at ¶ 9, citing *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 504 N.E.2d 19. "JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party." *Williams* at ¶ 9, citing Civ.R. 50(B).

{¶ 13} Franklin argues that Desai's unjust-enrichment claim accrued on the date that he wrongly retained the benefit that rightfully belonged to Desai. He further argues that unjust-enrichment claims are governed by the six-year statute of limitations period set forth in R.C. 2305.07 and are not "subject to equitable tolling or a discovery rule." Therefore, Franklin argues, Desai was entitled to recover only for the injuries that he received on the date of the filing of his complaint, January 22, 2002, and the six years preceding that date. He asks that we reduce Desai's unjust-enrichment award from $301,597.34 to $128,705.67, which represents the period from January 22, 1996, to January 22, 2002.

{¶ 14} "A successful claim of unjust enrichment requires that: (1) a benefit has been conferred by a plaintiff upon a defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Chef Italiano v. Crucible Dev. Corp.*, 9th Dist. No. 22415, 2005-Ohio-4254, 2005 WL 1963027, at ¶ 26. Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 14 N.E.2d 923.

{¶ 15} R.C. 2305.07 governs claims for unjust enrichment and provides that such claims must be "brought within six years after the cause thereof accrued." *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 182–183, 12 OBR 246, 465 N.E.2d 1298, citing R.C. 2305.07. Unlike other statutes of limitation, R.C. 2305.07 does not define the time at which a claim for unjust enrichment "accrues." Compare R.C. 2305.09 (providing that a claim for the wrongful taking of personal property does not accrue until the wrongdoer is discovered, and a claim for fraud does not accrue until the fraud is discovered). Accordingly, R.C. 2305.07 leaves that determination to the judiciary. See *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727, paragraph one of the syllabus ("Absent legislative definition, it is left to the judiciary to determine when a cause 'arose' for purposes of statutes of limitations"). A review of the law on this issue reveals a point of contention amongst the appellate courts that we now explore in detail. First, however, we examine the Ohio Supreme Court precedent relevant to the issue.

{¶ 16} "Generally, a cause of action accrues at the time the wrongful act is committed." *Harris v. Liston* (1999), 86 Ohio St.3d 203, 205, 714 N.E.2d 377, citing *O'Stricker*, 4 Ohio St.3d at 87, 4 OBR 335, 447 N.E.2d 727. Yet in certain instances, "fairness necessitates allowing the assertion of a claim when discovery of the injury occurs beyond the statute of limitations." *NCR Corp. v. U.S. Mineral Prods. Co.* (1995), 72 Ohio St.3d 269, 271, 649 N.E.2d 175, citing *O'Stricker*, 4 Ohio St.3d at 84, 4 OBR 335, 447 N.E.2d 727. "The 'discovery rule'

generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 179, 546 N.E.2d 206. The Ohio Supreme Court has employed the discovery rule to toll the applicable statute of limitations in a variety of instances. See *Norgard v. Brush Wellman, Inc.*, 95 Ohio St.3d 165, 2002-Ohio-2007, 766 N.E.2d 977 (holding that discovery rule applies to employer intentional tort); *Harris v. Liston* (1999), 86 Ohio St.3d 203, 714 N.E.2d 377 (holding that discovery rule applies to negligence actions against a developer-vendor for property damage); *Collins v. Sotka* (1998), 81 Ohio St.3d 506, 692 N.E.2d 581 (holding that discovery rule applies to wrongful-death action stemming from murder); *NCR Corp.*, 72 Ohio St.3d 269, 649 N.E.2d 175 (holding that discovery rule applies to property-damage claims for asbestos removal); *Browning v. Burt* (1993), 66 Ohio St.3d 544, 613 N.E.2d 993 (holding that discovery rule applies to claim against a hospital for negligently failing to ensure that one of its physicians had proper credentials); *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 637 N.E.2d 870 (holding that discovery rule applies in sexual abuse cases where victim represses memories of sexual abuse). To date, however, the Ohio Supreme Court has yet to decide the issue of whether the discovery rule applies to unjust-enrichment claims. See *Cundall v. U.S. Bank, N.A.*, 118 Ohio St.3d 1432, 2008-Ohio-2595, 887 N.E.2d 1201 (accepting appeal for review on memorandum in support of jurisdiction including the issue of the time at which R.C. 2305.07's statute of limitations begins to run on an unjust-enrichment claim).

{¶ 17} In *Palm Beach Co. v. Dun & Bradstreet, Inc.* (1995), 106 Ohio App.3d 167, 665 N.E.2d 718, the First District Court of Appeals declined to extend the discovery rule to unjust-enrichment claims. Palm Beach Co. brought an unjust-enrichment claim against Dun & Bradstreet in 1993, alleging that Dun & Bradstreet had wrongfully retained a benefit from Palm Beach Co. on each of their annual contracts spanning the years 1979 through 1982. Palm Beach Co. argued that it did not discover Dun & Bradstreet's wrongdoing until 1989, when Palm Beach Co. received a letter indicating that Dun & Bradstreet had charged Palm Beach Co. for more services than Palm Beach Co. needed. In considering that Palm Beach Co. had failed to bring its claim within the six-year statute of limitations period, the First District opined:

> [T]he traditional rule in Ohio appears to be that a cause of action for unjust enrichment accrues on the date that money is retained under circumstances where it would be unjust to do so. Although in certain cases the unlawfulness of the retention may not arise until there is a request for a return of the money, in the instant case * * * it was the receipt of the money that was unlawful, and therefore the cause of action accrued at the latest * * * in 1982

when the last of the alleged overcharges, or false billings or accountings, occurred.

(Citations and emphasis omitted.) *Palm Beach Co.*, 106 Ohio App.3d at 175, 665 N.E.2d 718. Thus, the First District focused on the last date that Dun & Bradstreet received, and Palm Beach Co. conferred, the benefit upon which Palm Beach Co. based its unjust enrichment claim. See id.

{¶ 18} Since the First District decided *Palm Beach Co.*, the Sixth, Eighth, and Tenth District Courts have employed its decision to hold that the six-year statute of limitations barred various unjust-enrichment claims. See *Binsack v. Hipp* (June 5, 1998), 6th Dist. No. H-97-029, 1998 WL 334223 (refusing to toll statute of limitations for unjust enrichment until plaintiff discovered her injury where she had sold her shares back to the defendant's company in 1979 and did not bring her claim until 1996); *Drozeck v. Lawyers Title Ins. Corp.* (Jan. 24, 2001), 8th Dist. Nos. 77083 and 77205, 2001 WL 106652, at *1 (applying, without further analysis, *Palm Beach's* holding that the discovery rule does not apply to unjust-enrichment claims); *Ignash v. First Serv. Fed. Credit Union*, 10th Dist. No. 01AP-1326, 2002-Ohio-4395, 2002 WL 1938412 (holding that plaintiffs' claim for unjust enrichment accrued in 1984 when they entered into a loan agreement with defendant and did not file their suit until 1999). Thus far, only the Second District Court of Appeals has taken a seemingly contrary position. See *Brown v. Vaniman* (Aug. 20, 1999), 2d Dist. No. 17503, 1999 WL 957721, at *5 ("[T]he existence of doctrines tolling the statute of limitations under various circumstances precludes a finding that there is no set of facts * * * that would allow him to recover [on his unjust-enrichment claim]"). Franklin asks this court to apply *Palm Beach Co.* and conclude that Desai's pre-1996 claims (those six years prior to his 2002 filing) are time barred. Our review of the law in this area, however, leads us to conclude that Franklin has misinterpreted the *Palm Beach Co.* decision.

{¶ 19} Although *Palm Beach Co.* refused to apply the discovery rule to unjust-enrichment claims, the First District's decision still recognized that unjust enrichment occurs when an individual confers an undeserved benefit. See *Chef Italiano*, 2005-Ohio-4254, 2005 WL 1963027, at ¶ 26 (outlining elements of unjust-enrichment claim). So long as a person continues to confer a benefit upon another, and the retention of that benefit is unjust, the unjust enrichment continues. See *Palm Beach Co.*, 106 Ohio App.3d at 175, 665 N.E.2d 718 (explaining that the unjust-enrichment claim accrued "at the latest * * * when the last of the alleged overcharges, or false billings or accountings, occurred"). Consequently, Palm Beach Co.'s unjust-enrichment claim failed because it had stopped conferring any benefit upon Dun & Bradstreet in 1982, 11 years before it filed its claim. See id. Palm Beach Co. had to resort to the discovery rule

because it allegedly did not become aware of its injury for more than six years after ending its contractual arrangement with Dun & Bradstreet. If Palm Beach Co. had continued to unjustly enrich Dun & Bradstreet after 1982, then its claim would not have begun to accrue in 1982. See id. We find this reading of *Palm Beach Co.* to be consistent with our precedent.

{¶ 20} Previously, this court held that an unjust-enrichment claim did not begin to accrue until the point at which the defendant's retention became unjust. See *Chaplain Kieffer Post 1081 v. Wayne Cty. Veterans Assn.* (Sept. 21, 1988), 9th Dist. No. 2358, 1988 WL 99188. In *Chaplain Kieffer Post 1081,* a Veterans of Foreign Wars Post ("post") placed some of its assets in a trust account under the name of the Wayne County Veterans Association ("association"). The assets were always to be for the benefit of the post. In 1980, the association became a separate organization, but continued to hold the post's assets. In 1985, new officers of the post asked the association about the assets, but the association claimed that it was entitled to them and that the statute of limitations barred the post from bringing suit to reclaim them. This court held that the post's unjust-enrichment claim did not accrue until 1985, when the association informed the post that it planned to keep the assets instead of holding them for the post's benefit. *Chaplain Kieffer Post 1081* at *3. Thus, even though the association had possession of the post's assets prior to 1985, the unjust-enrichment claim did not accrue until the association announced its intent to keep the assets for its own benefit. That announcement made the retention of the post's benefit unlawful and gave rise to the unjust-enrichment claim. Id. This holding comports with *Palm Beach Co.'s* holding that an unjust-enrichment claim accrues, at the latest, when the last unjust retention of the benefit occurs. See *Palm Beach Co.,* 106 Ohio App.3d at 175, 665 N.E.2d 718.

{¶ 21} Our reading of *Palm Beach Co.* also comports with the Sixth District's decision in *Binsack.* In *Binsack,* Binsack filed an unjust-enrichment claim against Hipp in 1996 after learning from another minority shareholder that Hipp had redeemed Binsack's shares for less than they were worth. The Sixth District noted that claims for unjust enrichment arise when a party retains a benefit that justice and equity demand belongs to another. *Binsack,* 6th Dist. No. H–98–029, 1998 WL 334223, at *7, citing *Liberty Mut. Ins. Co. v. Indus. Comm. of Ohio* (1988), 40 Ohio St.3d 109, 532 N.E.2d 124. As was the case in *Palm Beach,* Binsack finished conferring a benefit to Hipp in 1979, long before she filed her suit in 1996. Thus, the Sixth District concluded that the statute of limitations barred Binsack's claim based on the date that she had last conferred, and Hipp had last unjustly retained, a benefit, instead of the date upon which she discovered, or should have reasonably discovered, her injury. See id.

{¶ 22} Finally, our reading of *Palm Beach Co.* comports with the "last rendition of services" test that several federal courts have employed to claims of unjust enrichment. Under this test, "a cause of action for [unjust enrichment] begins to run when the final service has been performed." *Baer v. Chase* (C.A.3 2004), 392 F.3d 609, 623, quoting *GSGSB, Inc. v. New York Yankees* (S.D.N.Y. 1994), 862 F.Supp. 1160, 1171. The federal courts that have applied the last-rendition-of-services test have noted that this test exists separately from the discovery rule, which, they further held, does not apply to claims of unjust enrichment. See *Baer*, 392· F.3d at 622–623. See also *A.I. Credit Consumer Discount Co. v. Premiere Foods, Inc.* (D.N.J.2007), No. 04–4049, 2007 WL 3256733, at *10–11; *McQueen v. Woodstream Corp.* (D.D.C.2007), 244 F.R.D. 26, 35–36; *Stand Energy Corp. v. Columbia Gas Transm. Corp.* (S.D.W.Va.2006), No. Civ.A. 2:04–0867, 2006 WL 162988, at *2; *Blystra v. Fiber Tech Group, Inc.* (D.N.J.2005), 407 F.Supp.2d 636, 644–645. Thus, under our reading, *Palm Beach Co.* is consistent with these federal cases in that while *Palm Beach Co.* fails to apply the discovery rule to unjust enrichment claims, it also holds that such a claim does not accrue until the last point in time that the plaintiff conferred and a defendant unjustly received a benefit. See *Palm Beach Co.*, 106 Ohio App.3d at 175, 665 N.E.2d 718.

{¶ 23} The jury determined that Franklin had engaged in unjust enrichment from 1987 until Desai's departure in 2000. In 2000, Desai stopped working for Diagnostic Imaging, and thus, effectively stopped conferring a benefit to Franklin. Accordingly, we hold that Desai's unjust-enrichment claim accrued, at the latest, in 2000 when he resigned from the practice. We need not reach the issue of whether the discovery rule actually applies to an unjust enrichment claim because Desai brought his claim within the six-year statute of limitations period under R.C. 2305.07 once his claim accrued. Thus, the trial court did not err in concluding that the applicable statute of limitations did not bar Desai's claim. Franklin's first assignment of error is overruled.

## *Assignment of Error Number Three*

The trial court erred in denying Dr. Franklin's motion for judgment notwithstanding the verdict because the jury awarded damages that exceeded those established by Dr. Desai's own evidence.

{¶ 24} In his third assignment of error, Franklin argues that the trial court erred in denying his JNOV on the issue of the jury's award of damages for Desai's fraud claim. Specifically, Franklin argues that there was no evidence to support the award of $116,248 and that because the jury fully compensated Desai in the breach-of-fiduciary duty and unjust-enrichment awards, any additional award constituted a double recovery. We disagree.

{¶ 25} This court previously has held that a JNOV is not the proper mechanism for challenging the excessiveness of a jury's verdict. In *Jemson,* we opined:

> Appellant has not alleged that it is entitled to [JNOV] because Appellee's * * * claim is unsupported by substantial evidence. Rather, Appellant has argued that the jury award is not supported by the evidence and contrary to law. Such an argument is not appropriate on a motion for [JNOV] because Civ.R. 50(B) provides the means to challenge the jury's verdict, not the jury's award of damages. Appellant's assertion that the evidence does not support the award of damages is better placed in its argument for a new trial and remittitur, and will be addressed by this Court therein.

*Jemson v. Falls Village Retirement Community, Ltd.,* 9th Dist. No. 20845, 2002-Ohio-4155, 2002 WL 1842483, at ¶ 17. Because Franklin included a motion for a new trial in the alternative to his JNOV motion below, we review Franklin's assignment of error as an appeal from a denial of a motion for a new trial rather than a motion for JNOV.

{¶ 26} Pursuant to Civ.R. 59(A), "[a] new trial may be granted * * * on all or part of the issues upon any of the following grounds: * * * (4)[e]xcessive * * * damages, appearing to have been given under the influence of passion or prejudice." This court reviews a trial court's decision to grant or deny a new trial for an abuse of discretion. *Kallergis v. Quality Mold, Inc.,* 9th Dist. Nos. 23651 and 23736, 2007-Ohio-6047, 2007 WL 3355609, at ¶ 10. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 27} Franklin argues that the jury's award was excessive because there was no evidence in the record to support the fraud award. He claims that the jury's unjust-enrichment award fully compensated Desai for Franklin's wrongdoing and that any additional award constituted duplication. We disagree.

{¶ 28} "In Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." (Emphasis omitted.) *Moskovitz,* 69 Ohio St.3d at 655, 635 N.E.2d 331. "The size of a verdict, without more, is insufficient to prove passion or prejudice." *Buehler v. Falor* (Jan. 30, 2002), 9th Dist. No. 20673, 2002 WL 121204, at *3, citing *Weidner v. Blazic* (1994), 98 Ohio App.3d 321, 648 N.E.2d 565. Moreover, the record reflects that the trial court instructed the jury on duplication. The court told jurors that they must not "overlap or duplicate the amounts of [their] award [because that] would result in double damages" and that "any amounts that [they]

have determined will be awarded * * * for any element of damages in any count should not be considered again or added to any other element of damages in any count." This court presumes that a jury has followed the trial court's instructions. See *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph four of the syllabus, citing *State v. Fox* (1938), 133 Ohio St. 154, 160, 10 O.O. 218, 12 N.E.2d 413. Our review of the record convinces us that Franklin has failed to overcome this presumption or to point to " 'something contained in the record * * * that wrongfully inflamed the sensibilities of the jury.' " *Higgins v. Huntsman,* 9th Dist. No. 22564, 2005-Ohio-6920, 2005 WL 3537655, at ¶ 8, quoting *Shoemaker v. Crawford* (1991), 78 Ohio App.3d 53, 65, 603 N.E.2d 1114.

{¶ 29} Franklin also argues that the jury's verdict exceeded Desai's damages based on a conversation that one of the parties' attorneys had with the jury foreperson. Such evidence, however, is generally not admissible to impeach a jury verdict unless there is supporting evidence aliunde. Evid.R. 606(B); *State v. Hessler* (2000), 90 Ohio St.3d 108, 123, 734 N.E.2d 1237. Evidence aliunde is extraneous, independent evidence of alleged conduct based on the firsthand knowledge of one who is not a juror. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 75, 564 N.E.2d 54. Franklin fails to argue that any evidence aliunde exists that would impeach the jury's verdict. Consequently, the trial court did not abuse its discretion in denying Franklin's motion. See *State v. Penix,* 9th Dist. No. 23699, 2008-Ohio-1051, 2008 WL 649593, at ¶ 38. Franklin's third assignment of error is overruled.

### Assignment of Error Number Two

The trial court abused its discretion when it awarded prejudgment interest to Dr. Desai.

{¶ 30} In his second assignment of error, Franklin argues that the trial court abused its discretion when it awarded Desai $573,939.76 in prejudgment interest. Specifically, Franklin argues that (1) Desai failed to prove that he had made a good-faith effort to settle the case; (2) Franklin had made a good-faith effort to settle the case; and (3) the trial court improperly employed circular logic in determining what constituted a good-faith settlement offer by factoring the not-yet-awarded prejudgment interest into the calculation of Desai's potential, total award and using that number to access the reasonableness of the offers. We disagree.

{¶ 31} The version of R.C. 1343.03 in effect at the time of Desai's suit provided:

(C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct * * * shall be computed

from the date the cause of action accrued to the date on which the money is paid if * * * the [losing] party * * * failed to make a good faith effort to settle the case and * * * the [prevailing] party * * * did not fail to make a good faith effort to settle the case.

When a party prevails upon a contract rather than a tort, however, the party need not prove that there was a good-faith effort to settle or a lack thereof on the opposing party's part. R.C. 1343.03(A). Rather, "when money becomes due and payable upon * * * all judgments, decrees, and orders of any tribunal for the payment of money arising out of * * * a contract[,] * * * the creditor is entitled to interest" at the statutory rate. Id. Once a plaintiff prevails on a contract claim, the trial court must award the party prejudgment interest. *Zeck v. Sokol*, 9th Dist. No. 07CA0030–M, 2008-Ohio-727, 2008 WL 495481, at ¶ 44, citing *Zunshine v. Cott*, 10th Dist. No. 06AP–868, 2007-Ohio-1475, 2007 WL 926969, at ¶ 25. The only matter within the court's discretion is the determination of the starting date upon which to begin calculating the prejudgment interest. *Zeck* at ¶ 46. On the other hand, the choice to award prejudgment interest on a tortious-conduct claim is a matter of discretion for the trial court. Id. at ¶ 40.

{¶ 32} Franklin argues that the trial court erred in awarding prejudgment interest on Desai's claims for breach of fiduciary duty, fraud, and unjust enrichment because Desai failed to satisfy the good-faith elements of R.C. 1343.03(C). R.C. 1343.03(C), however, does not apply to all of Desai's claims. A claim for unjust enrichment constitutes a quasi-contractual claim and falls under the purview of R.C. 1343.03(A), not R.C. 1343.03(C). Id. at ¶ 43–45. Once the jury determined that Desai was entitled to $301,597.34 in unjust enrichment damages, the trial court was obligated to award Desai prejudgment interest on that claim. See R.C. 1343.03(A). The only matter left to the court's discretion was the determination of the date on which the prejudgment interest began to accrue. See *Zeck* at ¶ 46. Franklin has not argued that the trial court abused its discretion as to this determination. Accordingly, we find that the trial court did not err in awarding prejudgment interest on Desai's unjust enrichment claim.

{¶ 33} Desai's remaining claims for breach of fiduciary duty and fraud are instances of tortious conduct and claims upon which the trial court had the discretion to award prejudgment interest. See R.C. 1343.03(C). Desai filed his motion for prejudgment interest within the applicable time frame, and the record reflects that the trial court held a hearing on the matter of prejudgment interest on August 10, 2007. Consequently, the only issue left before us is whether the trial court abused its discretion when it determined that Desai had made a good-faith effort to settle the case and Franklin did not. See *Moskovitz*, 69 Ohio St.3d at 658, 635 N.E.2d 331 (listing the four elements of R.C. 1343.03(C) that must be satisfied to justify an award of prejudgment interest for tortious conduct).

{¶ 34} In evaluating R.C. 1343.03(C)'s good-faith requirement, a court must look to whether a party did the following:

" '(1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) [avoided any] attempt[s] to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party.' "

*Moskovitz,* 69 Ohio St.3d at 658, 635 N.E.2d 331, quoting *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, syllabus. A defending party need not make a monetary settlement offer, if he has "a good faith, objectively reasonable belief that he has no liability." *Kalain,* 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, at syllabus. Yet "it is incumbent on a party seeking an award to present evidence of a written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle." *Moskovitz,* 69 Ohio St.3d at 659, 635 N.E.2d 331.

{¶ 35} The trial court determined that Desai had made a good-faith effort to settle because his counsel "formally demanded $1 million" before trial. The trial court reasoned that this was a good-faith offer, considering Desai's three potential claims and the prejudgment interest that he might recover on those claims. Franklin argues that the trial court abused its discretion in making this determination because not-yet-awarded prejudgment interest should not be factored into the total, potential award that a plaintiff might receive. According to Franklin, the trial court should have considered only Desai's possible, underlying award, excluding any potential prejudgment interest, in assessing the reasonableness of any settlement offer.

{¶ 36} Even if we were to agree that Desai's initial offer was unreasonable, the record reflects that Desai amended his initial offer after the trial commenced. Desai's trial counsel, Scott Ruport, testified at the R.C. 1343.03(C) hearing that he offered to accept an amount in the "[$]600,000–plus range" after the initial demand for $1 million. He further testified that in response to this amended offer, Franklin's counsel "threw up his hands and walked away." Franklin admits that Desai made this amended offer, but argues that the amended offer was not in good faith because a reasonable offer would have excluded any recovery for (1) Desai's unsupported claim of fraud and (2) the portion of Desai's unjust-enrichment claim that was barred by the applicable statute of limitations. Yet we have already determined that these two claims, in their entirety, properly went before the jury. Given that Desai's judgment award amounted to a total of $468,515.52 and that Desai was entitled to mandatory interest on the $301,597.34 portion of the award relating to his unjust-enrichment claim, we cannot find that the trial court abused its discretion in finding that Desai made Franklin a good-

faith settlement offer. See *Kalain*, 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, at syllabus.

{¶ 37} Similarly, we cannot conclude that the court abused its discretion in finding that Franklin failed to make a good-faith settlement offer. The record reflects that Desai had multiple, potential claims against Franklin as an individual for his wrongful acts, which spanned more than a decade. Moreover, in response to Desai's lower settlement demand, Franklin's counsel ended the discussions by "thr[owing] up his hands and walk[ing] away." Given the severity of Franklin's conduct, the likelihood that Desai would prevail on his claims, and Desai's lower amended settlement demand, we cannot conclude that the trial court erred in concluding that Franklin failed to respond with a good-faith settlement offer. See id. Consequently, we hold that the trial court properly exercised its discretion in ruling that Desai had met all of R.C. 1343.03(C)'s requirements and awarding Desai prejudgment interest. Franklin's second assignment of error is overruled.

### Cross–Assignment of Error Number One

The trial court erred when it directed a verdict in favor of Franklin on the issue of punitive damages.

{¶ 38} In his first cross-assignment of error, Desai argues that the trial court erred in directing a verdict in Franklin's favor on the issue of punitive damages. Specifically, Desai argues that there was clear and convincing evidence that Franklin consciously disregarded Desai's rights with the knowledge that his actions would result in substantial harm to Desai. We disagree.

{¶ 39} Pursuant to Civ.R. 50(A)(4), a trial court may grant a directed verdict in the following instances:

When * * * the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]

" 'A motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.' " *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 4, quoting *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph three of the syllabus. Consequently, we review a trial court's ruling on a motion for directed verdict de novo. *Zeck*, 2008-Ohio-727, 2008 WL 495481, at ¶ 12.

{¶ 40} "An award of punitive damages in a tort case may be made only upon a finding of actual malice on the part of the defendant." *Niskanen v.*

*Giant Eagle, Inc.*, 9th Dist. No. 23445, 2008-Ohio-1385, 2008 WL 786820, at ¶ 38, citing *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 473, 575 N.E.2d 416. " 'Actual malice' for these purposes is '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.' " (Emphasis omitted.) *Calmes*, 61 Ohio St.3d at 473, 575 N.E.2d 416, quoting *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. Punitive damages are not meant to compensate an injured party. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 97, citing *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789. Rather, punitive damages are awarded for the purpose of punishing and deterring certain conduct. *Arbino* at ¶ 97, quoting *Moskovitz*, 69 Ohio St.3d at 651, 635 N.E.2d 331. The party seeking punitive damages bears the burden of proving his entitlement to them by clear and convincing evidence. *Weber v. Obuch*, 9th Dist. No. 05CA0048–M, 2005-Ohio-6993, 2005 WL 3556693, at ¶ 37–40, citing R.C. 2315.21. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 41} Desai argues that he was entitled to punitive damages because Franklin clearly committed a fraud and engaged in multiple forms of wrongful conduct. Yet "[a]n award of compensatory damages, or a finding that a tort was committed, does not automatically result in an award of punitive damages." *Smith v. Fortado* (Sept. 21, 1994), 9th Dist. No. 16559, 1994 WL 510841, at *2, citing *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 696, 590 N.E.2d 1228, overruled on other grounds, *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397. While Franklin's conduct should not be condoned, neither should every instance of wrongdoing give rise to a claim for punitive damages. The jury awarded Desai $468,515.52, and the trial court awarded him $573,939.76 in prejudgment interest for a total award of $1,042,455.28. At the time of trial, Franklin was 83 years old. Moreover, there was no evidence to suggest that his fraudulent conduct was ever widespread or otherwise part of a larger pattern of wrongdoing. Given these facts, reasonable minds would conclude that Desai failed to prove his entitlement to punitive damages by clear and convincing evidence. See *Arbino* at ¶ 97 (noting that punitive damages are awarded for the purpose of punishing certain conduct and deterring that conduct in the future). Thus, the trial court did not err in finding that Franklin was entitled to a directed verdict on the issue of punitive damages. Desai's first cross-assignment of error is overruled.

■■■■■■■■■■■■■■■■■■■

### Cross–Assignment of Error Number Two

The trial court erred when it failed to permit the jury to consider whether attorney fees should be awarded in favor of Desai.

■■ {¶ 42} In his second cross-assignment of error, Desai argues that the trial court erred in not submitting his claim for attorney fees to the jury. Specifically, Desai argues that Franklin acted in bad faith as Diagnostic Imaging's majority shareholder. Alternatively, Desai argues that once this court reverses the trial court on the issue of punitive damages, his claim for punitive damages also will entitle him to reasonable attorney fees. We disagree.

{¶ 43} In *Weber,* this court opined:

"In Ohio, each party is responsible for [his] own attorney[ ] fees except as provided for in certain statutory actions or when the opposing party is found to have acted maliciously. Appellant has not cited to a statute which provides for an award of attorney fees under the facts of the underlying case, and as we did not find that Appellant demonstrated actual malice on behalf of Appellee, we overrule Appellant's * * * assignment of error." (Citations omitted.)

*Weber,* 2005-Ohio-6993, 2005 WL 3556693, at ¶ 42. Much like *Weber,* Desai has not referred this court to any statute in this cross-assignment of error that would entitle him to reasonable attorney fees. Rather, he argues that Franklin's bad faith supports such an award. As we found in Desai's previous cross-assignment of error on the issue of punitive damages, however, the facts do not support a conclusion that Franklin acted with actual malice. Desai's bare claim that Franklin acted with bad faith does not satisfy either of the requirements that this court set forth in *Weber.* Consequently, Desai's second cross-assignment of error is overruled.

### Cross–Assignment of Error Number Three

The trial court abused its discretion when it denied Desai's motion for attorney fees and costs pursuant to [R.C. 2323.51] and Local Rule 7.17(E).

{¶ 44} In his third cross-assignment of error, Desai argues that the trial court abused its discretion in denying his motion for attorney fees pursuant to R.C. 2323.51. Specifically, he argues that Franklin engaged in frivolous conduct, which unnecessarily increased the costs of the parties' litigation. We disagree.

■■ {¶ 45} Initially, we note that while Desai's captioned assignment of error includes an argument that he was entitled to attorney fees pursuant to Loc.R. 7.17(E), Desai fails to address the Local Rule in the body of his argument. An appellant bears the burden of constructing an argument on appeal and supporting that argument with citations to the record and applicable legal authority. App.R. 16(A)(7). Desai has not met this burden with regard to his argument that Loc.R.

7.17(E) entitles him to reasonable attorney fees. Thus, we confine our analysis to his argument that R.C. 2323.51 warrants such an award.

{¶ 46} R.C. 2323.51 permits a court to sanction a party in a civil action for its frivolous conduct by awarding the opposing party reasonable attorney fees. The statute defines frivolous conduct as conduct that either:

(i) [ ] obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation[; or]

(ii) [ ] is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

R.C. 2323.51(A)(2)(a)(i)-(ii). " 'Appellate review of a trial court's award of attorney[ ] fees for frivolous conduct pursuant to R.C. 2323.51 is * * * under the abuse of discretion standard, but the trial court's factual findings supporting a conclusion that frivolous conduct occurred will not be overturned if they are supported by competent, credible evidence.' " *Ponder v. Kamienski*, 9th Dist. No. 23270, 2007-Ohio-5035, 2007 WL 2781197, at ¶ 31, quoting *S & S Computer Sys., Inc. v. Peng*, 9th Dist. No. 20889, 2002-Ohio-2905, 2002 WL 1375870, at ¶ 9. An abuse of discretion connotes more than an error of law or judgment. *Blakemore*, 5 Ohio St.3d at 219, 5 OBR 481, 450 N.E.2d 1140. It implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id.

{¶ 47} Desai argues that Franklin engaged in frivolous conduct because he repeatedly sought to delay the litigation process, and he failed to produce "the critical April 25, 1987 handwritten letter in which he fraudulently instructed [Diagnostic Imaging's accountant] to increase [his] administrative fee" under the employment agreement. Desai discovered the letter only after subpoenaing Lester Sherman, Diagnostic Imaging's accountant. According to Desai, Franklin's conduct amounted to a failure to cooperate in the trial process and warranted the imposition of sanctions.

{¶ 48} Based on our review of the record, we cannot conclude that the trial court abused its discretion in ultimately denying Desai attorney fees based on R.C. 2323.51. The record reflects that Desai sent Franklin a substantial number of interrogatories, requests for admissions, and requests for the production of documents. These discovery requests asked Franklin to respond to matters and produce items that were more than 20 years old. Moreover, at several points in the discovery process, Franklin delayed his discovery responses because he was seeking a protective order from the court. While Desai faults Franklin for unreasonably delaying the litigation, the record evinces that both parties sought

multiple continuances during the trial process. From the large amount of material requested, the potentially sensitive nature of that material, and the fact that both parties requested continuances on several occasions, we cannot say that the trial court erred in finding that Franklin needlessly delayed the litigation to the extent that sanctions were warranted.

{¶ 49} As for the handwritten letter that Franklin sent to Sherman, we also must conclude that the trial court did not err in refusing to grant sanctions against Franklin. Franklin sent Sherman the letter in 1987. Franklin never retained a copy of the letter and did not have it in his possession when Desai sent him a request to produce any documents that might potentially relate to the parties' fee arrangement. Rather, Sherman turned over the letter, which he had kept since 1987, to Desai once Desai subpoenaed it from him in his role as Diagnostic Imaging's accountant. While Franklin might have been more forthcoming about the letter in his responses, we will not dissect the exact language of Desai's discovery requests so as to disturb the discretion of the trial court in this instance. As we find that the trial court did not abuse its discretion in deciding not to sanction Franklin, Desai's third cross-assignment of error is overruled.

*Cross–Assignment of Error Number Four*

The trial court abused its discretion when it denied Desai's motion for attorney fees, costs and expenses pursuant to Civ.R. 37(C) relating to Franklin's failure to admit key requests for admissions.

{¶ 50} In his fourth cross-assignment of error, Desai argues that the trial court erred in refusing to impose Civ.R. 37(C) sanctions upon Franklin. Specifically, he argues that sanctions were appropriate because Franklin refused to admit the truthfulness of certain matters of "substantial importance" that were later proven at trial. We disagree.

{¶ 51} Civ.R. 37(C) permits a trial court to award a party reasonable attorney fees as a form of sanctioning the opposing party when that party has failed to respond or has otherwise improperly denied a request for admission under Civ.R. 36(A). The rule provides:

If a party, after being served with a request for admission under Rule 36, fails to admit the genuineness of any documents or the truth of any matter as requested, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses *incurred in making that proof*, including reasonable attorney's fees.

(Emphasis added.) Civ.R. 37(C). As with the decision to award other sanctions, a trial court has the discretion to determine whether to award sanctions under Civ.R. 37(C). *Maurer v. Boyd,* 9th Dist. No. 23818, 2008-Ohio-1384, 2008 WL 786815, at ¶ 5.

{¶ 52} On appeal, Desai argues that the trial court should have sanctioned Franklin for his failure to admit a multitude of items, including that he owed specific monetary amounts, forged Desai's and Carol Franklin's names on the shareholder meeting minutes, knew that Desai had no knowledge that Franklin had increased his administrative fee, failed to notify Desai of the shareholders meetings, and that Desai had performed all of his duties, and even additional duties, under the parties' agreements. Desai argues that "[a]s a result of Franklin's failure to admit the truthfulness of these matters, Desai was required to prove the truth of each matter during the trial of this action." Yet Desai fails to set forth what additional fees he incurred as a result of receiving Franklin's responses. That is, Desai has not demonstrated what additional work Franklin's answers caused him to incur in addition to the work that he had to perform anyway in order to prepare for trial. The responses to which Desai directs this court in support of his brief were not even filed with the trial court until June 4, 2007, the day that the jury trial commenced. It is unclear how Franklin's responses, not filed until the day of trial, could have been the cause of additional expenses to Desai before the trial. There would have been no reason for Desai to incur additional expenses disproving Desai's responses before trial when the responses were not even filed until the day of trial. Accordingly, Desai has not demonstrated that he incurred any additional expenses or attorney fees in proving his case at trial as a result of Franklin's responses. See Civ.R. 37(C) (providing that a party may be awarded expenses, including attorney fees, incurred in proving the genuineness of a document or truth of the matter improperly denied by the opposing party in a request for admission). As such, his fourth cross-assignment of error lacks merit.

### Cross–Assignment of Error Number Five

The trial court abused its discretion in failing to strike the affidavit of Lindsay M. Light.

{¶ 53} In his fifth cross-assignment of error, Desai argues that the trial court erred in considering the affidavit of Lindsay M. Light, upon which Franklin relied to support his motion for JNOV. We have already determined, however, that the trial court properly denied Franklin's motion for JNOV. Accordingly, Franklin's fifth cross-assignment of error is moot, and we decline to address it. See App.R. 12(A)(1)(c).

### Cross–Assignment of Error Number Six

The trial court abused its discretion in holding in abeyance Desai's motion to reconvey rather than immediately granting the motion so that the transferred asset could be preserved pending appeal.

{¶ 54} In his final cross-assignment of error, Desai argues that the trial court abused its discretion by ordering that Desai's motion to reconvey Franklin's property be held in abeyance. On October 23, 2007, Desai filed a motion to reconvey, requesting that the trial court order Franklin to reacquire certain property that he recently had conveyed to his son so that Desai might collect his judgment against Franklin. Subsequently, Franklin filed a motion to stay the execution of judgment and to ask the court to set a supersedeas bond. On October 31, 2007, Desai filed his notice of appeal with this court. Later that same day, the trial court entered an order setting the bond and ordering that Desai's motion to reconvey be held in abeyance. Desai seeks to challenge this ruling on appeal.

{¶ 55} App.R. 3(D) provides that a notice of appeal must "designate the judgment, order or part thereof appealed from." In *Dixon*, this court concluded that it could not consider an assignment of error that addressed a ruling that occurred after the appellant had filed his notice of appeal. *State v. Dixon*, 9th Dist. No. 21463, 2004-Ohio-1593, 2004 WL 628206, at ¶ 7–8. We noted that an appellate court " 'is without jurisdiction to review a judgment or order that is not designated in the appellant's notice of appeal.' " Id. at ¶ 7, quoting *Slone v. Bd. of Embalmers & Funeral Directors of Ohio* (1997), 123 Ohio App.3d 545, 548, 704 N.E.2d 633. This court further clarified its *Dixon* holding in *Armbruster v. Hampton*, 9th Dist. No. 05CA008716, 2006-Ohio-4530, 2006 WL 2527979, at ¶ 13–18. We opined that the purpose of App.R. 3(D) is " 'to notify potential appellees of an appeal and advise them as to what orders the appellant is appealing from.' " *Armbruster* at ¶ 15, quoting *Dixon* at ¶ 7. Consequently, "[i]t is axiomatic that an appellee would not be advised that an appellant is appealing from an order issued in the trial court after the filing of the notice of appeal unless the appellant has taken steps to amend the notice of appeal pursuant to App.R. 3(F)." *Armbruster* at ¶ 15.

{¶ 56} Desai filed his notice of appeal before the trial court entered the ruling that he now seeks to challenge on appeal. The record reflects that Desai never sought to amend his notice of appeal in order to attach the court's order, and that order is not a part of the record on appeal. It is well established that "a trial court only speaks through [its] journal entry[.]" *State v. Overstreet*, 9th Dist. No. 21367, 2003-Ohio-4530, 2003 WL 22015529, at ¶ 8. Because the journal entry that Desai appeals from is not a part of the record, we lack jurisdiction to consider Desai's sixth cross-assignment of error. See *Dixon* at ¶ 8.

## III

{¶ 57} Appellant and cross-appellee Franklin's assignments of error are overruled. Appellee and cross-appellant Desai's first, second, third, and fourth cross-

assignments of error are overruled. Desai's fifth cross-assignment of error is moot. Finally, Desai's sixth cross-assignment of error is dismissed, as this court lacks jurisdiction to consider it.

Judgment affirmed.

SLABY, J., concurs.

MOORE, P.J., concurs in part and dissents in part.

MOORE, P.J., concurring in part and dissenting in part.

{¶ 58} I concur in the thoughtful and well-reasoned opinion of the majority to the extent that it resolved assignments of error one, two, and three and cross-assignments of error three, four, five, and six. I must, however, respectfully dissent from the majority's overruling of Desai's first and second cross-assignments of error.

{¶ 59} As to Desai's first cross-assignment of error, he challenged the trial court's granting of Franklin's motion for directed verdict on the issue of punitive damages. Civ.R. 50(A)(4) requires the trial court to construe all evidence in a light most favorable to Desai, the party against whom the motion was filed. Against the backdrop of that standard, it is clear that Desai produced clear and convincing evidence that Franklin consciously disregarded his rights, knowing it would result in substantial harm to Desai. The conduct of Franklin, a professional, can only be described as shocking. There is testimony in the record from which a jury could reasonably conclude that, although he was fully aware of the terms of a long-standing contract with Desai, Franklin secretly changed the terms, resulting in a substantial loss of income to Desai, withheld documents, forged signatures, and lied when confronted about these issues during a deposition taken under oath. Under these facts, I must respectfully dissent from the majority's finding that the trial court did not err in directing a verdict in favor of Franklin on the issue of punitive damages.

{¶ 60} The majority cites the award of compensatory damages and for prejudgment interest which Desai obtained, and then notes that Franklin was 83 years old at the time of trial. The majority sets out at ¶ 40 the appropriate factors for awarding punitive damages. The amount of compensatory damages, the fact of a prejudgment-interest award, or the age of the defendant is not among them. " 'The jury is given wide discretion in determining whether punitive damages are justified and in assessing the amount of such damages based upon its collective judgment as to the punitive and deterrent effect that such an award would have.' " *Wright v. Suzuki Motor Corp.*, 4th Dist. Nos. 03CA2, 03CA3, 03CA4, 2005-Ohio-3494, 2005 WL 1594850, at ¶ 190, quoting *Waddell v. Roxane Laboratories, Inc.*, 10th Dist. No. 03AP–558, 2004-Ohio-2499, 2004 WL 1103710, at ¶ 44.

The jury might have awarded one dollar in punitive damages against Franklin. The point is that it was the jury's decision to make, not the trial court's. Accordingly, I would reverse and remand to the trial court for submission of punitive damages to the jury.

{¶ 61} As to the second cross-assignment of error, I would reverse the trial court's failure to submit to the jury the issue of attorney fees, as I find the record replete with evidence that Franklin acted with actual malice. Therefore, Desai was entitled to present to the jury his claim for attorney fees.