OPINION
{¶ 1} Peter Ferguson appeals from his conviction of having a weapon while under disability after a jury trial. Ferguson did not provide this court with a typed portion of the transcript (the videotape) needed to address the assignments of error he makes in this appeal. See, App.R. 9(B). The essential facts are not however in dispute and are contained in the State's brief.
 {¶ 2} On July 8, 2004, Herb Rogers and Timothy Liddy, both police officers with the city of Dayton, Ohio, were on patrol in the vicinity of the Western Manor Apartments, located in the 1700 block of North James H. McGee Boulevard. At approximately 8:30 in the morning, Officer Rogers encountered a woman he knew, Zina Duke. Duke had been walking in the direction of Rogers, but as soon as she saw him, she turned and walked the other way.
 {¶ 3} Officer Rogers proceeded to the properties' rental office, where he was told by an employee that Peter Ferguson was in Duke's apartment. Rogers knew that Ferguson had been "trespassed" from the Western Manor property, and so he sent someone to bring Duke to talk to him. When Zina Duke was brought to the office, Officer Rogers could see that she had a swollen lower lip. Rogers also saw that Duke was visibly shaking and Rogers thought Duke looked "nervous" and "scared." Id. Officer Liddy also thought that Duke looked nervous, and he noticed that Duke had a small amount of blood on her swollen lip.
 {¶ 4} Rogers asked Duke some questions, and Duke told Rogers that Ferguson was in her apartment, that he had hit her in the mouth, and that she did not want him in her apartment. When Officer Rogers asked Duke if she wanted him and Officer Liddy to remove Peter Ferguson from her apartment, Duke said, "Yes, but he has a gun."
 {¶ 5} Officer Rogers called for back-up, and after two other officers arrived, they entered Duke's apartment at gunpoint. Once inside the apartment, the officers occupied safe positions in the living room, and Rogers began to call to Ferguson, whom Duke had told him would be in the apartment's first bedroom. Rogers called to Ferguson, and yelled as loud as he could, several times identifying himself and telling him to come out with his hands up. After the officers got no response from Ferguson, they went towards the bedroom and kicked down the door.
 {¶ 6} Rogers was the first to enter the bedroom, and he saw Ferguson, lying on the bed with his hands beside his head and a handgun in front of him on the bed, roughly six inches from his hands. Officer Liddy entered the bedroom shortly after Rogers and saw Ferguson with the gun in the same position as Rogers had seen him. According to Officer Rogers, Ferguson was awake when he entered the bedroom, but Officer Liddy believed that Ferguson was asleep. The officers then disarmed Ferguson and handcuffed him.
 {¶ 7} In his first assignment, Ferguson argues that the trial court committed "plain error" in failing to instruct the jury that he should be acquitted if he was found asleep at the time of the alleged offense. Ferguson notes that Officer Liddy testified that he was asleep at the time he and the other police officer entered the bedroom. Ferguson argues that the trial court should have given the instruction provided in Ohio Jury Instructions at 409.05 which reads as follows:
 {¶ 8} "Where a person commits an act while unconscious as in a blackout due to sleep such an act is not a criminal offense even though it would be a crime if such act were the product of a person's volition.
 {¶ 9} "If you have a reasonable doubt whether the defendant was conscious at the time of such act, you must find that he is not guilty."
 {¶ 10} Ferguson argues that the court's failure to give this instruction could have affected the outcome of the trial because the jury was invited to speculate on the meaning of the terms "knowingly" and "constructive possession" or to make the inference that he knew he had the gun before he went to sleep. He argues that an equal inference could have been made by the jury that he was "set up" by Ms. Duke who placed a gun near him to retaliate against him.
 {¶ 11} The State argues that the instruction provided in 405.09 adds nothing to the instructions that were given by the trial court at trial since the instructions on the culpability state of "knowingly" and the term "possession" adequately informed the jury that the defendant must be conscious of the presence of the firearm and his possession of it at the time of the offense. The trial court gave the following instruction at the trial:
 {¶ 12} "A person acts `knowingly,' regardless of his purpose, when he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You willdetermine from these facts and circumstances, whether there existed atthe time in the mind of the defendant an awareness of the . . .probability that he acquired, had, carried, or used a firearm. `Have' means `to possess.' Possession of a firearm is an essential element of the offense of having weapons under disability. Possession is a voluntaryact if the possessor knowingly procured or received the firearm. A personhas possession if he knows that he has the object on or about his personor his property, or places it where it is accessible to his use or direction and he has the ability to direct or control its use. . . . Constructive possession means that the defendant was able to exercise dominion or control over an object even though the object may not be within his immediate, physical possession. It may also be shown that thedefendant was conscious of the presence of the object." (Disk 2, Video File 09h09m15s, at 00:48:52-50:28, emphasis added).
 {¶ 13} Appellant is raising this issue for the first time on appeal and has thus waived all but plain error. State v. Long (1978),53 Ohio St.2d 91, 95-96. The plain error doctrine represents an exception to the usual rule that errors must first be presented to the trial court before they can be raised on appeal and permits an appellate court to review an alleged error where necessary to prevent a manifest "miscarriage of justice." Id. at 96. To prevail under a plain error standard, then, an appellant must demonstrate both that there was an obvious error in the proceedings and that but for the error, the outcome of the trial clearly would have been otherwise. State v. Noling,98 Ohio St.3d 44, 2002-Ohio-7044. Arguably the trial court would have been required to give the instruction found at 409.05 had Ferguson requested it. We do not, however, believe the outcome of the trial clearly would have been otherwise had the instruction been given. We agree with the State's argument that the trial centered around the question of whether Ferguson controlled the firearm either immediately before he fell asleep or while awake as Officer Rogers observed him. The first assignment of error is overruled.
 {¶ 14} In his second assignment, Ferguson argues that he was denied a fair trial because the prosecutor engaged in an unfair final argument. Ferguson argues that the prosecutor improperly "vouched" for the credibility of the police officers because he argued that the officers would lose their jobs and go to jail if they were caught lying in court.
 {¶ 15} Secondly, Ferguson argues that the prosecutor improperly stated in his final argument that Ferguson had beaten Zina Duke when he was not charged with assault or domestic violence. Lastly, he argues that the prosecutor improperly argued that the police engaged in good police work by entering the bedroom "for who knows what he (Ferguson) would have done with that gun." Ferguson argues that this argument suggested he was a thug, goon, or hit man.
 {¶ 16} The prosecutor made the following argument regarding the police officers' testimony.
 {¶ 17} "Officers who take that stand and testify under oath are subject to the same penalties of perjury that any other witness is. Not only are they subject to penalties of perjury, but they get up on the stand, they're lying, they're going to lose their jobs. And they could go to prison. Officer Rogers would throw away a fifteen-year police career and Officer Liddy would give up his new, four-year police career to lie about this guy? On a weapons possession case? Those officers have no motivation to lie."
 {¶ 18} We do not find that the prosecutor's remarks amounted to a "vouching" of the police officer's testimony. There was nothing improper about these remarks.
 {¶ 19} The prosecution further argued the following:
 {¶ 20} "We are talking reasonable doubt — he is talking unreasonable doubt. What is more unreasonable than a woman who has just been beaten, with a fat lip that both officers described to you, by a man, putting a loaded gun in his hand? Ladies and gentlemen, that would be suicide. . . . Why on earth would a domestic violence victim put a loaded gun in someone's hand? Unreasonable. By fair, unreasonable."
 {¶ 21} These remarks by the prosecutor were made to rebut defense counsel's suggestion in final argument that Zina Duke may have planted the loaded gun on the bed to frame Ferguson. We see nothing improper about this argument. Zina Duke's statements to the police were admitted at trial without objection and the prosecution was merely referring to evidence produced at trial.
 {¶ 22} Lastly, the prosecutor made the following remark:
 {¶ 23} "The undisputed testimony is the officers saw that gun on or about his person within his reach. And had it not been Dayton police yelling at the door, who knows what he would have done with that gun. But it certainly was his accessible firearm on or about his person."
 {¶ 24} Arguably, the prosecutor's remark that "who knows what he would have done with the gun" was improper, but it was not plain error. Defense counsel did not object to the prosecutor's remark. It is unlikely that this remark altered the outcome of the defendant's trial. State v.Keenan (1993), 66 Ohio St.3d 402. The second assignment of error is overruled.
 {¶ 25} In his last assignment of error Ferguson argues that his trial counsel was constitutionally ineffective for not requesting the involuntary acts instructions and for failing to object to the remarks of the prosecution in final argument.
 {¶ 26} Ferguson must show that there exists a reasonable probability that but for counsel's errors, the result of his trial would have been different. Strickland v. Washington (1984), 466 U.S. 668. He has failed to make that showing. The third assignment of error is overruled.
 {¶ 27} The judgment of the trial court is Affirmed.
Grady, J., and Donovan, J., concur.