[Cite as *Tesar Indus. Contractors v. Republic Steel*, 2018-Ohio-2089.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

TESAR INDUSTRIAL CONTRACTORS, INC.

      Appellee/Cross-Appellant

      v.

REPUBLIC STEEL

      Appellant/Cross-Appellee

C.A. No.     16CA010957
            16CA010960

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    13CIV181984

DECISION AND JOURNAL ENTRY

Dated: May 29, 2018

SCHAFER, Presiding Judge.

{¶1} Appellant/Cross-Appellee, Republic Steel, appeals the judgment of the Lorain County Court of Common Pleas. Additionally, Appellee/Cross-Appellant, Tesar Industrial Contractors, Inc., appeals from the trial court's judgment. For the reasons set forth below, this Court affirms.

I.

{¶2} In 2012, Republic initiated a project to construct an electronic arc furnace at Republic's facility in Lorain, Ohio. The project involved several components, including the erection of supporting and surrounding structures. Republic solicited bids for the project, which required multiple contractors to perform different and overlapping portions.

{¶3} Tesar submitted an initial bid of $5,482,495.00 to perform work on the project as a structural contractor for the exhaust system. After some negotiation, Tesar submitted a reduced proposal to Republic on March 22, 2013, with a quote of $4,830,000.00 to perform its portion of

work on the project. Republic accepted Tesar's bid, and issued a purchase order dated March 27, 2013, resulting in the parties' original contract.

{¶4} The project fell significantly behind schedule and costs began to mount. Republic faulted Tesar's mismanagement for these issues, but Republic also acknowledged that it had some degree of responsibility for initial delays on the project and recognized that unforeseen difficulties had led to some cost overruns. Both Republic and Tesar desired to push forward and complete the project quickly, so the parties began to negotiate a revised contract.

{¶5} Tesar, then in a position to appreciate the scope of the remaining work, submitted a proposal to complete the project. The parties entered into their revised contract when Republic accepted Tesar's proposal and issued a purchase order on August 20, 2013, authorizing payment to Tesar in an amount not to exceed $3,712,701.20 for the scope of work described therein. This purchase order also specified that, if any additional work should be required, Republic must issue a revision to the purchase order prior to the work being performed.

{¶6} Once again, the work on the project strayed off course both in terms of time and costs. Republic accused Tesar of persistent performance failures and failure to abide by Republic's policies. Tesar blamed Republic for the delay and increased costs, citing Republic's overall failure to adequately manage the project and attempts to cut corners.

{¶7} Tesar contends that Republic's project manager, Mark Qualls, began to directly manage the project on a time and materials basis. Further, Tesar claims that Mr. Qualls began verbally instructing Tesar to perform additional work and "out of scope" work prior to obtaining additional purchase orders with assurances of payment. Ultimately, Republic determined that Tesar could not credibly guarantee completion of the project, so it terminated Tesar and obtained another contractor to complete the work.

{¶8} Tesar filed suit against Republic in November of 2013, alleging that Republic breached the parties' original agreement from March of 2013, the parties' revised agreement from August of 2013, and agreements for "out of scope" work that Republic directed Tesar to perform in addition to the scope of work described in the original and revised agreements. Tesar also asserted claims for fraudulent inducement and unjust enrichment. Republic answered Tesar's complaint, and filed a counterclaim alleging three causes of action, including a claim that Tesar breached the original and revised contracts. Republic also asserted a claim for declaratory judgment and a claim of unjust enrichment.

{¶9} The matter proceeded to a jury trial. At the close of Tesar's case, the court granted Republic's motion for directed verdict, disposing of Tesar's claim for fraud in the inducement. After fourteen days of trial, the remaining claims were submitted to the jury. The jury returned a verdict in favor of Tesar on its breach of contract claim, awarding $3,078,000.00 in damages, and a verdict in favor of Tesar on its claim of unjust enrichment and awarded damages in the amount of $462,128.00, for a total damage award of $3,540,128.00. As to Republic's counterclaims for breach of contract and unjust enrichment, the jury found in favor of Tesar and entered verdicts against Republic on both claims. The jury's resolution of these claims rendered moot, and thereby effectively disposed of, Republic's claim for declaratory judgment. On January 29, 2016, the trial court entered judgment accordingly.

{¶10} Thereafter, Republic filed post-trial motions for judgment notwithstanding the verdict, a new trial, or remittitur. The trial court denied these motions in its April 28, 2016 journal entry. On May 26, 2016, Republic appealed the trial court's judgment denying the post-trial motions. Tesar filed a cross-appeal on June 6, 2016. Initially, the cross-appeal was docketed separately, but the matters have been consolidated. Republic raises three assignments

of error for our review, while Tesar raises one assignment of error in its cross-appeal. For ease of analysis, we consider the assignments out of order.

II.

## Republic's Assignment of Error II

**The trial court erred by not granting Republic a new trial on the breach of contract claim because the jury was not correctly instructed on the contract duties.**

{¶11} In its second assignment of error, Republic argues that it is entitled to a new trial because it is error to instruct a jury as to the breach of duties not presented in a contract, and to instruct the jury that they may find a breach based on such nonexistent duties. Specifically, Republic claims that the court erred by including in the instructions an "enumerated list of actions[,]" or purported breaches, which Tesar failed to tie back to a contractual duty. Republic claims to have objected to the format of the instructions enumerating alleged breaches and, further, that it objected specifically to instructing the jury on duties that did not exist in the contract.

{¶12} Civ.R. 59(A) provides multiple grounds upon which a party may base a motion for a new trial and, depending on the basis stated in the motion, "this Court will review a trial court's decision to grant or deny the motion under either a de novo or an abuse of discretion standard of review." *Jackovic v. Webb*, 9th Dist. Summit No. 26555, 2013-Ohio-2520, ¶ 17. Republic contends that, because its "new trial motion was based on a question of law," this Court must apply a de novo standard of review. Obscuring the issues, however, Republic only cited generally to Civ.R. 59(A) in the portions of its motion for a new trial based on the alleged error in the jury instructions.

{¶13} On appeal, as in its motion for a new trial, Republic has failed to designate any particular Civ.R. 59(A) grounds as a basis for this argument. Additionally, Republic made "no attempt to explain why or how Civ.R. 59(A)'s particular components apply to any of its arguments." *Ulrich v. Mercedes Benz USA, LLC*, 187 Ohio App.3d 154, 2010-Ohio-348, ¶ 27 (9th Dist.). The catch-all provision of Civ.R. 59(A), which permits a new trial to "be granted in the sound discretion of the court for good cause shown," is the only clearly applicable provision, and so we review for abuse of discretion. *Jenkins v. Krieger*, 67 Ohio St. 2d 314, 320 (1981). In relation to the disposition of a motion for a new trial, abuse of discretion entails an unreasonable, arbitrary, or unconscionable attitude upon the part of the court." *J.A. Berk & Assocs. v. Levin*, 9th Dist. Lorain C.A. No. 01CA007943, 2002-Ohio-3182, ¶ 20, quoting *Poske v. Mergl*, 169 Ohio St. 70, 75 (1959).

{¶14} Generally, it is within the trial court's sound discretion to determine how to instruct the jury. *Nist v. Mitchell*, 9th Dist. Summit No. 27160, 2015-Ohio-4032, ¶ 27. When examining errors in jury instructions, "a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.'" *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93 (1995), quoting *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208 (1990). "If there is no inherent prejudice in the inclusion of a particular jury instruction, prejudice must be affirmatively shown on the face of the record, and it cannot be presumed." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 35.

{¶15} Moreover, Civ.R. 51(A) provides that "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the

objection." When a party fails to object to a jury instruction as required by Civ.R. 51(A), our review is limited to plain error. *Kitson v. Gordon Food Serv.*, 9th Dist. Medina No. 15CA0078-M, 2016-Ohio-7079, ¶ 10, citing *Yungwirth v. McAvoy*, 32 Ohio St.2d 285, 288 (1972). The civil plain error doctrine is a "very high standard[.]" *Perez v. Falls Fin.*, 87 Ohio St.3d 371, 375 (2000). "[T]he plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, (1997) syllabus.

A. Enumeration of Alleged Breaches

{¶16} In its brief, and in its motion for a new trial below, Republic avers that it objected to providing the jury with any instruction enumerating alleged breaches of contract. The record, however, belies Republic's claim that it objected to the *form* of the jury instructions the court gave for breach of contract. During the jury instruction conference, Republic did express some concern by stating counsel's uncertainty as to whether some of the alleged breaches were "obligations under the contract." However, this comment was in the context of the parties' ongoing discussion as to the appropriate way to instruct the jury on this particular matter and Republic stopped short of specifically objecting to an instruction enumerating alleged breaches. Regarding the list of alleged breaches, Republic informed the trial judge that it was "okay removing it all to make it more simple and not confuse the jury," but that if Tesar was going to include a list of alleged breaches, Republic wanted to "reciprocate" and have its alleged breaches "listed the same way."

{¶17} After closing arguments the trial judge instructed the jury, in pertinent part:

[F]or the claim of the breach of contract, before you can find for Tesar they have to prove by a preponderance of the evidence [A,] that Tesar and Republic entered into one or more contracts; [B,] that Republic breached the contract or contracts by, and I'm going to list a number of things which Tesar claims was a breach.

The trial court listed the following alleged breaches:

a. failing to timely provide materials to Tesar;
b. providing Tesar with damaged or defective materials;
c. failing to provide materials to Tesar in a manner consistent with industry standards;
d. failing to provide timely and/or accurate design information, including drawings and specifications, for Tesar's labor, work, and/or services;
e. failing to timely provide erection drawings to Tesar and/or, in other cases, failing to provide any erection drawings to Tesar;
f. failing to coordinate the labor, work, and/or services of other contractors or persons for whom Republic was responsible;
g. directing the means and methods of Tesar's labor, work, or services;
h. directing cardinal changes to Tesar and Republic's agreed-to scope of work without the issuance of a purchase order; and
i. failing to compensate Tesar for labor, work, services, material, and equipment provided by Tesar to Republic.

The judge further instructed: "[s]o those are a list of potential ones. However, even if they prove that those were breaches, you have, Tesar has to prove that such a breach was a material breach, and not just a minor breach * * *."

{¶18} This format of the instructions—enumerating Tesar's alleged breaches—is at least manifestly correct. The standard Ohio Jury Instructions for proof of claim for a breach of contract states:

Before you can find for the plaintiff, you must find by the greater weight of the evidence that
(A) the parties entered into a contract, and
(B) the defendant (broke) (breached) the contract by (*insert nature of breach[es] claimed by the plaintiff*), * * *

(Emphasis sic.) *Ohio Jury Instructions*, CV Section 501.01. The lower court's instructions listing the nature of the breaches alleged by Tesar are consistent with this format. Further, Republic has not set forth a plain error argument to demonstrate that the format of these

instructions seriously affected the basic fairness, or integrity of the judicial proceedings. *See Goldfuss*, 79 Ohio St.3d at syllabus. We decline to create such an argument on Republic's behalf as it is not the duty of this Court to develop such an argument if one exists. *Patio Enclosures, Inc. v. Four Seasons Marketing Corp.*, 9th Dist. Summit No. 22458, 2005-Ohio-4933, ¶ 52, citing *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, at 22 (May 6, 1998).

B.  Objection to Specific Alleged Breaches

{¶19}  Republic next argues that "[a]s the court indicated it would enumerate anyway, Republic objected specifically to instructing the jury on duties that did not exist in the contract." Of the nine alleged breaches of contract listed in the instructions, Republic's brief references three in particular: (f) "failing to coordinate the labor * * * of other contractors," (g) "directing the means and methods of Tesar's labor," and (h) "directing cardinal changes to [the] agreed-to scope of work without the issuance of a purchase order." Republic contends that the jury was improperly instructed as to these breaches which lack any contractual basis.

{¶20}  The record shows that, regarding alleged breach (h), directing cardinal changes without issuing a purchase order, Republic waived its objection and agreed to the language used. As the judge and counsel for Tesar were discussing alleged breach (h), counsel for Republic interjected:

> Your Honor, I would be okay with this if it said something directing cardinal changes to Tesar and Republic's agreed to scope of work without the issuance of out-of-scope purchase orders, without the issuance of the purchase order.

The judge stated that the instructions would include the clarifying language Republic suggested, and the parties agreed without any objection. It is disingenuous for Republic to now claim that the trial court erred by failing to grant a new trial based, in part, on an instruction submitted to

the jury upon agreement of the parties. Republic not only failed to object to such an instruction, but affirmatively agreed to it so long as the charge included Republic's proposed language. In doing so, Republic invited any error in the instruction, and it is well-settled that "[a] party will not be permitted to take advantage of an error which he himself invited or induced." *Wojcik v. Pratt*, 9th Dist. Summit No. 25609, 2011-Ohio-5012, ¶ 10, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus; *Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, ¶ 39 (1st Dist.). Consequently, Republic's argument on this portion of the instruction is not well taken.

{¶21} The record reflects that Republic specifically objected to two of the alleged breaches:

> f. failing to coordinate the labor, work, and/or services of other contractors or persons for whom Republic was responsible;
> g. directing the means and methods of Tesar's labor, work, or services;

Republic contends that the trial court erred by instructing the jury that they may find a breach based on these alleged contractual duties that did not exist in the contract. Republic asserts that "'[t]he law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract.'" *Fultz & Thatcher v. Burrows Group Corp.*, 12th Dist. Warren No. CA2005-11-126, 2006-Ohio-7041, ¶ 30, quoting *Montgomery v. Bd. of Edn.*, 102 Ohio St. 189, 193 (1921).

{¶22} Republic has not supported its assertion that the trial court inserted contractual terms where none existed. Since the filing of its complaint, Tesar has alleged that Republic breached one or more written and oral contracts. The jury instructions list these alleged actions and/or inactions by Republic, which Tesar claims constitute breach of one or more contract. Republic has asserted only its legal conclusion that alleged breaches in the jury instructions were

not based on duties either explicitly or impliedly stated in contract. However, Republic failed to present argument pointing to any portion of the record identifying the various alleged contracts to demonstrate its claimed absence of these duties.

{¶23} Furthermore, Republic has failed to affirmatively demonstrate prejudice based on the inclusion of these alleged breaches in the instructions. *See McMichael v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 28333, 2017-Ohio-7594, ¶ 64. The interrogatories did not call upon the jurors to distinguish or identify which contract or contracts Republic breached, or to specify the nature of any breach. It is entirely plausible that the jury based its verdict on any one of the alleged breaches that are indisputably based in contract, as opposed to one of these two alleged breaches in dispute.

{¶24} Republic's underdeveloped argument and unsupported assertion that these alleged breaches were not based in contract between the parties is inadequate to support its claim that the jury instructions were erroneous. As the party assigning error, Republic has the burden of affirmatively demonstrating the error on appeal, and substantiating its arguments in support. *Schmitt v. Ward*, 9th Dist. Summit No. 28219, 2017-Ohio-6975, ¶ 7. Considering the jury instructions on the whole, we conclude that Republic has not demonstrated the likelihood that the jury was misled in a matter materially affecting Republic's rights. *See Kokitka*, 73 Ohio St.3d at 93. We cannot say that the trial court abused its discretion when it declined to grant a new trial on this basis.

{¶25} Republic's second assignment of error is overruled.

### Republic's Assignment of Error I

**The trial court erred by not granting remittitur or partial judgment notwithstanding the verdict on Tesar's breach of contract claim where the evidence did not support the jury's damage award.**

{¶26} In its first assignment of error, Republic argues that the evidence did not support the jury's damage award on the breach of contract claim, and so the trial court erred when it denied Republic's motion for partial judgment notwithstanding the verdict, or, in the alternative, the motion for remittitur. The jury found that Republic breached one or more contracts with Tesar, and entered a verdict in favor of Tesar for its breach of contract claims. Tesar argued for compensatory damages on the breach of contract claims totaling $3,893,631.00 and the jury awarded $3,078,000.00. Republic asks that the damages be reduced to no more than $1,681,403.00. As to Republic's claim for breach of contract against Tesar, the jury found that Republic did not prove its claim, and entered judgment in favor of Tesar.

{¶27} Republic contends that contract damages must be limited by the "not-to-exceed" term contained in the August 2013 purchase order, which listed a net price of $3,712,701.20 and in the description section it stated, in pertinent part:

> NOT TO EXCEED – WORK, INCLUDING OVERTIME, NEEDED TO INSTALL REMAINING EAF STRUCTURES, DUCT WORK & BAG PROPOSAL #13-C-055
> ****IMPORTANT NOTICE****THE TOTAL DOLLAR AMOUNT LISTED ON THIS ORDER IS NOT TO BE EXCEEDED. IF ADDITIONAL WORK IS REQUIRED, A REVISION TO THIS PURCHASE ORDER MUST BE ISSUED PRIOR TO THE WORK BEING PERFORMED. IF ADDITIONAL WORK IS PERFORMED PRIOR TO HAVING THIS ORDER REVISED, REPUBLIC WILL NOT BE RESPONSIBLE FOR ANY ADDITIONAL CHARGES INCURRED BY THE CONTRACTOR DUE TO VIOLATING REPUBLIC POLICY, UNLESS SPECIFICALLY APPROVED BY PURCHASING.

Republic argues that Tesar failed to present evidence that Republic waived "key terms" of the contract, including: (1) the "not-to-exceed" or maximum contract price, (2) the change order process for approving additional work, and (3) a requirement that modifications must be made in writing. On this basis, Republic argues that the jury's damages award was excessive and,

notwithstanding the verdict, partial judgment must be entered in Republic's favor or a remittitur ordered in the amount supported by the evidence.

A.  Judgment Notwithstanding the Verdict

{¶28}  After judgment has been entered upon a jury's verdict, "a party may serve a motion to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion."  Civ.R. 50(B).

> The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict.  The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied.  Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

*Jackovic v. Webb*, 2013-Ohio-2520, at ¶ 15, quoting *Osler v. Lorain*, 28 Ohio St.3d 345, 347 (1986), quoting *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275 (1976).  This Court reviews a trial court's ruling on a motion for judgment notwithstanding the verdict de novo.  *Airborn Electronics, Inc. v. Magnum Energy Solutions, LLC*, 9th Dist. Summit No. 28034, 2017-Ohio-70, ¶ 18.

{¶29}  Republic asserts that "the most Tesar could have recovered was $1,681,403" and "[a]ny additional amounts would be governed by and in excess of the contract cap."  The essence of Republic's argument is that the amount of the jury's damage award is not supported by the evidence.  However, Republic does not contend that evidence presented did not support the jury's *verdict*.

{¶30}  This Court has held that a motion for judgment notwithstanding the verdict "is not the proper mechanism" to attack an excessive damage award.  *Desai v. Franklin*, 177 Ohio

App.3d 679, 2008-Ohio-3957, ¶ 25 (9th Dist.); *accord Magnum Steel & Trading, LLC v. Mink*, 9th Dist. Summit Nos. 26127 and 26231, 2013-Ohio-2431, ¶ 44 (noting that an argument that a damage award was inadequate is not appropriate under Civ.R. 50(B), but should instead be challenged under Civ.R. 59(A)); *Catalanotto v. Byrd*, 9th Dist. Summit No. 27302, 2015-Ohio-277, ¶ 9; *but see Kane v. O'Day*, 9th Dist. Summit No. 23225, 2007-Ohio-702, ¶ 23-25 (reversing denial of a motion for judgment notwithstanding the verdict where damages were not contested at trial because the parties had stipulated as to the amount of damages). An argument that a jury award is not supported by the evidence "is not appropriate on a motion for [judgment notwithstanding the verdict] because Civ.R. 50(B) provides the means to challenge the jury's verdict, not the jury's award of damages. Republic's "assertion that the evidence does not support the award of damages is better placed in its argument for * * * remittitur, and will be addressed by this Court therein." *Desai* at ¶ 25, quoting *Jemson v. Falls Village Retirement Community*, 9th Dist. Summit No. 20845, 2002-Ohio-4155, ¶ 17.

B. Remittitur

**{¶31}** "Remittitur is merely an alternative to a new trial[.]" *Brooks v. Wilson*, 98 Ohio App.3d 301, 307 (9th Dist.1994). Where a party has been awarded "[e]xcessive or inadequate damages, appearing to have been given under the influence of passion or prejudice" it is within a trial court's discretion to grant a new trial. Civ.R. 59(A)(4). If the trial court is faced with a verdict that is manifestly excessive, but does not appear to be influenced by passion or prejudice, the court may order a remittitur. *Lance v. Leohr*, 9 Ohio App. 3d 297, 298, (1983). This Court reviews a trial court's decision to deny remittitur for an abuse of discretion. *Jemson* at ¶ 26.

**{¶32}** We note that Republic's assignment of error does not precisely align with the arguments presented to the trial court in the post-trial motions, and, on appeal, Republic does not

assert that the trial court erred when it declined to grant a new trial based on the amount the jury awarded for breach of contract. Rather, Republic argues that the verdict is manifestly excessive, and contends that remittitur is appropriate. Republic's argument is predicated on the claim that Tesar was required to prove "waiver" of certain contractual provisions in order to recover damages beyond the price cap contained in the parties' revised agreement of August 2013. Republic contends that the evidence did not establish that Republic waived the not-to-exceed provision or the process for approving additional work. Republic claims that, consequently, the damage award is untenable and recovery for contract damages cannot exceed the $1,681,403.00[1] figure Republic calculates in its brief.

{¶33} "[T]he assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice *or* a finding that the award is manifestly excessive." (Emphasis sic.) *Price v. KNL Custom Homes, Inc.*, 9th Dist. Summit No. 26968, 2015-Ohio-436, ¶ 46, quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 654 (1994). The jury was instructed to consider Tesar's claims that Republic breached one or more contracts. The jury was not asked to identify which contract or contracts Republic breached or to indicate the manner of breach, nor were they asked to breakdown or specify the nature of the damage award aside from Interrogatories 1(b) and 1(c), which instructed the jurors to separate "direct damages" from damages attributable to interest, attorney fees, or liquidated damages.

{¶34} Republic waited until after the close of evidence, after the matter was submitted to the jury, and after the jury rendered its verdict to raise the argument that the terms of the August

---

[1] Notably, this amount differs from the $1,273,093.00 figure that Republic asserted below in its motion for new trial or remittitur.

2013 purchase order could restrict all damages for breach of contract. In raising this argument for the first time in its post-trial motions, Republic attempts to disguise as an evidentiary issue what is truly a matter of contract interpretation that was not timely presented for consideration. Nevertheless, Republic now seeks to enforce, in its favor, provisions contained in one of the contracts at issue in an effort to cap all contract damages post-judgment.

**{¶35}** In response, Tesar maintains that it presented sufficient evidence to establish waiver. However, our review of that issue is limited by the fact that Republic has not cited to legal authority or explained any basis for insisting that, in addition to proving the elements of breach of contract, Tesar assumed the added burden of proving that Republic waived provisions of the revised agreement as a prerequisite to recovering damages in excess of the agreed maximum price for the revised agreement. *See* App.R. 16(A)(7); *Cardone*, 1998 Ohio App. LEXIS 2028, at 27. Republic has not established that the not-to-exceed provision in the revised agreement can, as a matter of law, operate to limit Tesar's recovery of contractual damages. Accordingly, this Court concludes that Republic has not demonstrated that the trial court abused its discretion by concluding that the damages were not against the weight of the evidence and denying its request for remittitur.

**{¶36}** Republic's first assignment of error is overruled.

### Republic's Assignment of Error III

**The jury improperly awarded breach of contract damages for Tesar's unjust enrichment claim.**

**{¶37}** Republic argues that the trial court erred in denying its motion for judgment notwithstanding the verdict because a jury may not award unjust enrichment damages for a matter governed by contract. Republic asserts that, although Tesar requested that the jury award $462,128.00 for consequential breach of contract damages, the jury awarded Tesar nothing on

that component of its claim. However, Republic points out, the jury did award Tesar that exact amount—$462,128.00—on its breach of contract claim. It is Republic's position that, contrary to law, the jury improperly awarded Tesar contractual damages for its unjust enrichment claim because "there is no other conceivable explanation for the basis of the [unjust enrichment] award being that precise amount." We disagree.

**{¶38}** Civ.R. 50(B) provides for judgment notwithstanding the verdict when "upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the non-moving party reasonable minds could come to but one conclusion, that being in favor of the moving party." *Williams v. Spitzer Auto World*, 9th Dist. Lorain No. 07CA009098, 2008-Ohio-1467, ¶ 9. Although the trial court must review and consider the evidence in deciding the motion, the court does not weigh the evidence or consider the credibility of witnesses, because the decision to grant judgment notwithstanding the verdict is based on questions of law and does not involve the determination of factual issues. *Id*. This Court reviews a trial court's ruling on a motion for judgment notwithstanding the verdict de novo. *Airborn Electronics, Inc.*, 2017-Ohio-70 at ¶ 18.

**{¶39}** "Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject." *Padula v. Wagner*, 9th Dist. Summit No. 27509, 2015-Ohio-2374, ¶ 48. However, Republic has not argued that Tesar *sought* to recover upon the theory of unjust enrichment for damages covered by a contract. Instead, Republic contends that Tesar sought to recover $462,128.00 for damages that it attributed to the breach of contract, and argues the fact that the jury awarded that amount for unjust enrichment cannot be coincidence and cannot be explained any other way; the jury must have awarded contract damages upon Tesar's unjust enrichment claim.

{¶40} "A presumption always exists that the jury has followed the instructions given to it by the trial court." *Nelson Jewellery Arts Co. v. Fein Designs Co., LLC*, 9th Dist. Summit No. 23655, 2007-Ohio-7042, ¶ 75, quoting *Pang v. Minch*, 53 Ohio St.3d 186, 195 (1990). As to Tesar's claim for unjust enrichment, the trial court instructed the jury:

> If you find that the labor, work, services, material and equipment claimed to have been provided by Tesar are encompassed within the terms of the written contract, Tesar's unjust enrichment claim is unavailable. However, if you find that the labor, work, services, material and equipment claimed to have been provided by Tesar are not encompassed with the terms of the written contract, Tesar's unjust enrichment claim is available.

Further, Interrogatory No. 2(a) asked the jury: "Did Tesar prove by the greater weight of the evidence that Republic was unjustly enriched by work performed by Tesar that was outside the scope of the terms of any written contract between Tesar and Republic?" Upon answering that question in the affirmative, the jury was instructed to proceed to Interrogatory No. 2(b), which asked:

> What amount of damages, if any, do you find by the greater weight of the evidence will fairly and reasonably compensate Tesar for any damages caused by Republic's unjust enrichment? Any item of damage already awarded to Tesar for its breach of contract claim and listed in interrogatory 1(b) or 1(c) SHALL NOT also be awarded here. Please indicate your answer below and have each juror sign below to indicate whether they are in agreement with the stated amount.

"Therefore, this Court must presume that the jury followed the trial court's instruction[s]" that it must not find unjust enrichment for matters covered by contract, that unjust enrichment is available only for work performed outside of the contract, and that it may not award unjust enrichment damages for any item of damage already awarded for contract. *Id*.

{¶41} Nevertheless, Republic urges that this presumption is rebuttable based on conclusions that must be drawn from the distinct amount awarded. Referencing "Exhibit 1104", which is a damages summary that was not admitted into evidence and which is not in the record

before this Court, Republic maintains that speculation as to the basis of the damage award is unnecessary since the jury award is improper on its face because the precise amount of the award reveals the jury's error. Republic claims, based upon its unsupported argument that the award for unjust enrichment was, in fact, based on "damages for matters governed by contract," that the appropriate remedy was for the trial court to enter judgment in its favor notwithstanding the jury's finding that Republic was unjustly enriched.

{¶42} It was within the province of the jury to assess a damage award for unjust enrichment in an amount supported by the evidence and not otherwise recoverable pursuant to contract. *See Magnum Steel & Trading, LLC v. Mink*, 2013-Ohio-2431 at ¶ 32. Republic has not argued that the evidence was insufficient to sustain an award in that amount, only that the unique amount of the award is, in and of itself, indicative that the jury erred in awarding damages for the breach of contract claim and necessarily reflective of an error of law. Relying on what it believes to be inexplicable coincidence, Republic has failed to meet its burden to rebut the presumption that the jury followed the instructions and to affirmatively show that the award was based on passion, prejudice, or manifestly excessive. *See Id.* Upon review, we conclude that Republic's argument is based on nothing more than speculation. Thus, we conclude that the trial court did not err when it determined that Republic was not entitled to judgment notwithstanding the verdict.

{¶43} Republic's third assignment of error is overruled.

### Tesar's Cross-Assignment of Error

**The trial court erred by granting Republic[]'s motion for directed verdict on Tesar's fraud in the inducement claim at the close of Tesar's case-in-chief by mistakenly weighing the evidence instead of merely testing the sufficiency of the evidence.**

{¶44} In its sole assignment of error, Tesar contends that the trial court erred in dismissing its fraud in the inducement claim on a directed verdict. "'[A] motion for directed verdict is granted if, after construing the evidence most strongly in favor of the party against whom the motion is directed, 'reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.' The 'reasonable minds' test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party.'" *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, ¶ 22, quoting *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, ¶ 3. Accordingly, we apply the de novo standard of review to the trial court's ruling on a motion for directed verdict. *Holiday Properties Acquisition Corp. v. Lowrie*, 9th Dist. Summit Nos. 21055 and 21133, 2003-Ohio-1136, ¶ 48.

{¶45} Fraud in the inducement arises when a party is induced to enter into an agreement based on a misrepresentation. *Terry v. Bishop Homes of Copley, Inc.*, 9th Dist. Summit No. 21244, 2003-Ohio-1468, ¶ 21. The fraud relates not to the nature of the contract, but to the facts prompting its execution. *Id.* quoting *Harper v. J.D. Byrider*, 148 Ohio App.3d 122, 2002-Ohio-2657, ¶ 11 (9th Dist.). To prevail on a claim of fraud in the inducement, a plaintiff must establish the elements of fraud:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Ponder v. Culp*, 9th Dist. Summit No. 28184, 2017-Ohio-168, ¶ 11. Thus, the misrepresentation must be made with the intent of inducing the party's reliance. *Terry* at ¶ 21.

{¶46} Tesar has argued that Gustavo Gunter, Republic's supervising manager for the project, misrepresented that the work for which Tesar submitted a proposal could be completed for $4,830,000.00, and fraudulently induced Tesar to lower its bid for the project. Tesar argues that Mr. Gunter "orchestrated an effort to drive Tesar to his own internal goal number by" stating that he had at least one lower bidder at $4,830,000.00 and that Tesar could complete the project for $4,830,000.00. Tesar argues that Mr. Gunter's statement as to a fair price to complete the work constitutes a material misrepresentation because his use of the "very specific figure" of $4,830,000.00 was significant, in that "owners who claim prior experience such as Republic * * * ordinarily make their own calculation of construction costs against which they evaluate bidders." Tesar also argues that Mr. Gunter falsely claimed that Republic had at least one lower bidder at $4,830,000.00.

{¶47} The record reflects that Tesar reviewed the plans for the project, assessed the scope of work, and considered the man-hours involved before calculating an estimate of $5,482,495.00. Tesar submitted an initial proposal to complete the work for that amount, but Republic indicated the bid was too high. Mark Kahanca, Tesar's project manager, then emailed Mr. Gunter, reducing Tesar's proposal "to an even $5 million[,]" adding that "[it] reflects as much as we can comfortably reduce our bid." Mr. Gunter responded with a request for a second meeting with Tesar.

{¶48} Mr. Kahanca testified that, during the second meeting, Mr. Gunter indicated that there was another bid on the project lower than Tesar's, but that Mr. Gunter expressed that Republic wanted to work with Tesar and would do so if they agreed to lower their bid to $4,830,000.00. Mr. Gunter represented that he had experience constructing arc furnaces: one in Mexico and one in Brazil. Mr. Kahanca testified that "[Mr. Gunter] told [him] based on his

experience with these other plants that he felt that was a fair and accurate number that [Tesar] could perform this work." Following the meeting, Mr. Gunter emailed Mr. Kahanca in reference to their recent conversation and wrote:

> [i]n order to [give you all the structural work] we need to equalize the other structural quotes that is why we need you to keep with the $4.83 million [] figure. As I said to you before, if you can achieve this number then the order is yours and I will give you the preference in the mechanical erection.

{¶49} Initially we note that it is not clear that Mr. Gunter's statements, (1) asserting his belief that Tesar could complete the work for $4,830,000.00 and (2) making reference to the existence of lower quotes, were false or that they can be construed as misrepresentations. At trial, Mr. Gunter confirmed that he had expressed his belief that an experienced and well-organized Tesar could complete the work for $4,830,000.00, though he could not recall his basis for arriving at that particular number. Mr. Gunter also testified that he had indeed disclosed to Mr. Kahanca that Republic received lower bids on the project, though he did not disclose the identity of these other companies. Mr. Gunter acknowledged that those companies did not propose a specific number to Republic, but rather a cost range within which they could complete the work. The issue lies in Mr. Kahanca's interpretations and assumptions regarding these statements, which Tesar asserts both as the basis for claiming that the statements are misrepresentations *and* for relying on those representations. Nevertheless, even if this Court were to assume that Mr. Gunter's statements constitute misrepresentations as to Tesar's ability to perform the work for $4,830,000.00, Tesar must still identify sufficient evidence in the record to show that it justifiably relied on such representations.

{¶50} "Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances." *Lapos Constr. v. Leslie*, 9th Dist. Lorain No. 06CA008872, 2006-Ohio-5812, ¶

21, citing *Lepera v. Fuson*, 83 Ohio App.3d 17, 26 (1st Dist.1992). To determine whether Tesar *justifiably* relied on any of Mr. Gunter's representation when it lowered its bid, "this Court must inquire into the relationship between the parties." *Johnson v. Church of the Open Door*, 179 Ohio App.3d 532, 2008-Ohio-6054 ¶ 16 (9th Dist.), quoting *Lapos Constr.* at ¶ 21. That inquiry requires this Court to "'consider the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective means and knowledge, as well as other circumstances.'" *Id.* quoting *Farris Disposal, Inc. v. Leipply's Gasthaus, Inc.*, 9th Dist. Summit No. 22569, 2005-Ohio-6737, ¶ 18.

{¶51} Mr. Kahanca indicated in his testimony that he did not believe Mr. Gunter was just guessing as to the $4,830,000.00 number; he thought the number would be based on some information. Mr. Kahanca explained

> from my experience it was, if the plant had been built somewhere else before what it would cost to do it there or a piece of equipment, and the supplier always gives you some kind of guesstimate on how much it's going to do to put their equipment together.

Mr. Kahanca claims to have relied on Mr. Gunter's representations because he was "very professional" and because Mr. Gunter told Mr. Kahanca that "he had built one plant and was in the process of building another plant, and he had very much experience with this type of equipment." Further, Mr. Kahanca testified that he understood Mr. Gunter's reference to equalizing pricing to be "in reference to the quotes that were received other than [Tesar's] in that range of [$4,830,000.00,]" which he interpreted to mean that there were other quotes at $4,830,000.00. Tesar also argues the significance of the specificity of Mr. Gunter's $4,830,000.00 number. Mr. Kahanca testified as follows:

> Q. And that's a very specific number, $4.83 million?
> A. Yes, it is.
> Q. Did you draw any conclusions by such a specific number?

A. Well, by the specific number, like I said, if he had said about 5 million or about 4., he never used the word about, he said that is the price.
Q. So did that influence your decision in reducing your bid?
A. Yes, it did.
Q. And did you—you relied on the representations?
A. I did.

Thus, in light of Mr. Gunter's experience on two similar projects located outside of the United States, his reference to the existence of lower bidders, and his use of a specific number, Mr. Kahanca understood the figure to be not just a guess, but rather a "guesstimate" as to how much it should cost to complete the work. Tesar then argues that it was justified in relying on the number that Mr. Gunter proposed as fair and reasonable.

**{¶52}** Tesar does not point to any evidence or even suggest that Mr. Gunter, or any other representative from Republic, ever claimed to have based this $4,830,000.00 number on calculations or an estimate as to what it would *actually cost Tesar* to complete the work. The record reflects that Republic, while negotiating bids, indicated that it would work with Tesar *if* Tesar could "achieve" the $4,830,000.00 number. The testimony and evidence indicate that Tesar and Republic were dealing on equal terms, and that Mr. Kahanca had not previously worked with Mr. Gunter. Despite Tesar's industry knowledge and experience bidding contracts, it chose not to inquire as to the basis for Mr. Gunter's target number of $4,830,000.00 and failed to independently determine the facts of the circumstances. Notwithstanding the fact that Tesar's own cost estimates provided a reason to doubt its ability complete the work for that amount, Tesar agreed to lower its bid by $170,000.00.

**{¶53}** The law affords protection for a party's "interest in formulating business judgments without being misled by others into making unwise decisions which result in financial loss[.]" *Davidson v. Hayes*, 69 Ohio App.3d 28, 31 (9th Dist.1990). However, Tesar was not "entitled to blindly rely upon representations, especially" where Tesar possessed "'the means of

knowledge'" to independently determine the true facts of the circumstances. *Farris Disposal, Inc.*, 2005-Ohio-4733 at ¶ 18, quoting *J. A. Industries v. All Am. Plastics, Inc.*, 133 Ohio App.3d 76, 84 (3d Dist.1999) ("[A] party dealing on equal terms with another is not justified in relying on representations where the means of knowledge are readily within his reach"), *see Radice Partners, Ltd. v. Angerman*, 9th Dist. Lorain No. 90CA004861, 1991 Ohio App. LEXIS 209, at 12 (Jan. 16, 1991).

{¶54} Construing the evidence submitted most strongly in favor of Tesar, this Court determines that reasonable minds could come to but one conclusion regarding such evidence, and that conclusion is adverse to Tesar. Mr. Kahanca's testimony as to his subjective interpretations and assumptions regarding Mr. Gunter's statements is insufficient evidence to support Tesar's claim that they justifiably relied on any alleged misrepresentation by Mr. Gunter in reducing their bid. In light of the foregoing, we conclude that the trial court correctly granted a directed verdict in Republic's favor on Tesar's fraud in the inducement claim.

{¶55} Tesar's assignment of error is overruled.

III.

{¶56} Republic's assignments of error are overruled. Tesar's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant/Cross-Appellee.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

PIERRE H. BERGERON, LAUREN S. KULEY, and LARISA M. VAYSMAN, Attorneys at Law, for Appellant/Cross-Appellee.

ROYCE R. REMINGTON, JEFFREY A. BRAUER, MATTHEW D. WARTKO, and CHRISTOPHER W. ST. MARIE, Attorneys at Law, for Appellee/Cross-Appellant.